**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL D. GREEN**, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:17-CV-05652 |
| Plaintiff, | |
| v. | |
| **MORNINGSTAR, INC., PRUDENTIAL INVESTMENT MANAGEMENT SERVICES LLC, AND PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY**, | Hon. Virginia M. Kendall |
| Defendants. | |

**MORNINGSTAR, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

Background ........................................................................................................................ 1

Argument ......................................................................................................................... 4

I.      Green Has No Standing To Assert A RICO Claim Against Morningstar. ............................. 6

II.     Green Fails To Plead The Elements Of A RICO Claim Against Morningstar. .................... 7

      A.     Green Fails To Allege Morningstar Conducted Or Participated In A RICO Enterprise. ............................................................................................................ 8

      B.     Green Fails To Plead A Predicate Act. ................................................................ 11

III.    Green Cannot Allege A Predicate Act Under RICO Because His Allegations Sound In Securities Fraud. ............................................................................................................ 14

Conclusion ..................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Med. Ass'n v. 3Lions Publ'g, Inc.*,
No. 14-CV-5280, 2015 WL 1399038 (N.D. Ill. Mar. 25, 2015)................................8

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)........................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................4

*Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*,
941 F.2d 561 (7th Cir. 1991) ..........................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................4

*Bd. of Trs. of Ironworkers Local No. 498 Pension Fund v.*
*Nationwide Life Ins. Co.*,
No. 04 C 821, 2005 WL 711977 (N.D. Ill. Mar. 28, 2005) ......................................5

*Boyle v. United States*,
556 U.S. 938 (2009)........................................................................................8

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) ........................................................................3

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ............................................................................4

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) ............................................................................7

*Domanus v. Locke Lord LLP*,
847 F.3d 469 (7th Cir. 2017) ..........................................................................12

*Elias v. Stewart Title of Ill.*,
No. 09 C 6773, 2010 WL 4482102 (N.D. Ill. Nov. 1, 2010)....................................4

*Goren v. New Vision Int'l, Inc.*,
156 F.3d 721 (7th Cir. 1998), *modified by Brouwer v. Raffensperger, Hughes*
*& Co.*, 199 F.3d 961 (7th Cir. 2000)..................................................................5

*Guaranteed Rate, Inc. v. Barr*,
    912 F. Supp. 2d 671 (N.D. Ill. 2012) ...............................................................................4, 9

*Hecker v. Deere*,
    556 F.3d 575 (7th Cir. 2009) .................................................................................................3

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010) ...................................................................................................................6

*Holland v. Cerberus Capital Mgmt.*,
    No. 13-CV-00491, 2014 WL 6473479 (N.D. Ind. Nov. 18, 2014) ........................................6

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*,
    No. 09-CV-20071, 2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) ............................................6

*Jacobs v. Xerox Corp. Long Term Disability Income Plan*,
    520 F. Supp. 2d 1022 (N.D. Ill. 2007) .................................................................................7

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ...............................................................................................................7

*Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*,
    214 F. Supp. 3d 675 (N.D. Ill. 2016) ...................................................................................6

*Oberoi v. Mehta*,
    No. 10-CV-7275, 2011 WL 1337107 (N.D. Ill. Apr. 6, 2011) ..............................................9

*Petit v. Wash. Mut. Bank, F.A.*,
    No. 12-CV-318, 2012 WL 3437287 (N.D. Ill. Aug. 14, 2012) ..............................................8

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
    No. 15-CV-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016), *appeal
    docketed*, No. 17-239 (2d Cir. Jan. 23, 2017) .....................................................................10

*Rowland v. Haven Props. LLC*,
    No. 5 C 1957, 2005 WL 2989901 (N.D. Ill. Nov. 7, 2005)....................................................3

*Scott v. Steingold*,
    No. 97-CV-7871, 1998 WL 704287 (N.D. Ill. Sept. 30, 1998) ........................................14, 15

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................................................4

*Starfish Inv. Corp. v. Hansen*,
    370 F. Supp. 2d 759 (N.D. Ill. 2005) ...............................................................................7, 11

*Total Renal Care, Inc. v. Coalition Am., Inc.*,
    No. 08-CV-2629, 2009 WL 10670649 (N.D. Ga. June 12, 2009)....................................11–13

iii

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014) ..................................................................................10

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*,
772 F.3d 1102 (7th Cir. 2014) ..................................................................................5

*United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits*
*Fund v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013) .......................................................................8, 9, 11

*United States v. Black*,
No. S4 00 CR. 632, 2002 WL 460063 (S.D.N.Y. Mar. 26, 2002)..........................14

*United States v. Lopreato*,
83 F.3d 571 (2d Cir. 1996)......................................................................................13

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
20 F.3d 771 (7th Cir. 1994) ......................................................................................5

*Yellen v. Hake*,
437 F. Supp. 2d 941 (S.D. Iowa 2006) .....................................................................3

## Statutes

18 U.S.C. § 1954............................................................................................... *passim*

18 U.S.C. § 1961.......................................................................................................11

18 U.S.C. § 1962...............................................................................................6, 8, 12

18 U.S.C. § 1964.......................................................................................................14

## Other Authorities

29 C.F.R. § 2550.408b–2(c)(iii) (2012) .............................................................12, 13

Federal Rule of Civil Procedure 9(b)........................................................................4

Federal Rule of Civil Procedure 12(b)(6) ................................................................4

Plaintiff Michael D. Green improperly attempts to bring a claim for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") that includes neither racketeer influence nor corrupt organizations. In his complaint, Green shoehorns run-of-the-mill business relationships that are already heavily regulated by the Employee Retirement Income Security Act of 1974 ("ERISA") into the RICO statute. But Green cannot cobble together a RICO claim out of any of the defendants' lawful conduct, and moreover, Morningstar's only role in the GoalMaker product that is the basis of Green's complaint is to provide model asset allocations by asset class categories for a flat consulting fee. As a result, Green's pleading deficiencies are particularly stark with respect to Morningstar, and fail even to demonstrate that he has standing to raise a RICO claim against it. Accordingly, Green's claim against Morningstar should be dismissed with prejudice.[1]

## BACKGROUND

Green is an employee of Rollins, Inc. ("Rollins"), and a participant in the Rollins Plan (the "Plan"). (Compl. ¶¶ 2, 29.) The Plan is a defined contribution retirement plan, or a 401(k) plan. (Id. ¶ 5.) The Plan's participants contribute to their own accounts, and choose how to invest among the Plan's investment fund options. (Ex. 1, Rollins 401(k) Savings Plan Form 11-K, at 7.)[2] The Plan's sponsors and administrators are Rollins and its subsidiaries, who are not parties to this action. (Ex. 2, 2016 Form 5500, July 13, 2017, at 1–2.)

---

[1] Green has named only Morningstar, Inc., as a defendant, but he also refers to "Morningstar Associates" at points in his complaint. Green's allegations appear to arise from work performed by the entity previously known as Morningstar Associates, LLC, which changed its name to Morningstar Investment Management LLC effective January 1, 2016. For simplicity, this memorandum uses "Morningstar" to refer to all of the relevant Morningstar entities. In addition, for purposes of this motion only, Morningstar takes Green's properly pled factual allegations as true.

[2] Unless otherwise specified, all citations to exhibits refer to exhibits attached to the Declaration of Amanda S. Amert ("Amert Declaration"), filed concurrently herewith.

Prudential Retirement Insurance and Annuity Company ("PRIAC") provides recordkeeping and other administrative services to retirement plans, including the Plan. (Compl. ¶ 32.) Prudential Investment Management Services LLC ("PIMS" and, together with PRIAC, the "Prudential Defendants") is a registered broker-dealer. (*Id.* ¶ 31.) Morningstar Investment Management LLC is a registered investment advisor and wholly owned subsidiary of Morningstar, Inc., headquartered in Chicago. It provides independent investment research and data to financial advisors, asset management firms, retirement plan providers, and individual investors. (Ex. 3, Morningstar Form 10-K, at 7–8.)

During Green's time as a Plan participant, the Plan utilized GoalMaker, which he contends is an "automated investment advice program," to assist Plan participants in allocating their retirement investments among the investment fund options offered within the Plan. (Compl. ¶¶ 8, 37–38.) PIMS marketed GoalMaker to Plan participants (*id.* ¶ 31), and PRIAC provided GoalMaker to the Plan (*id.* ¶ 32).

PRIAC created GoalMaker for its defined contribution retirement plan customers and individual retirement account customers. (Ex. 5, Licensing and Consulting Work Order ("W. Ord."), at 2; *see* Compl. ¶¶ 2, 8, 14–16.) GoalMaker uses a modified PRIAC questionnaire to aid investors in selecting a model portfolio allocation. (Ex. 5, W. Ord., at 3.) GoalMaker allocates a participant's account in one of a set of model portfolios, based upon risk tolerance and years to retirement. (Compl. ¶¶ 9, 14; Ex. 5, W. Ord., at 8, 11–12.)

Green alleges that, although the Prudential Defendants provide GoalMaker free of charge to plans, they restrict the investment options available via GoalMaker to higher-fee options that pay more to PRIAC in revenue sharing, even if the plans offer suitable alternatives with lower fees, and do not disclose those restrictions to plan sponsors or participants. (Compl. ¶¶ 13, 15–

16, 19, 37–39, 43, 57–59.)  He posits that the Prudential Defendants received millions of dollars of "revenue sharing kickbacks" as a result.  (*Id.* ¶¶ 12, 24, 63.)

Morningstar has a limited role in GoalMaker.[3]  Each GoalMaker model portfolio consists of a set of asset classes selected by PRIAC (such as fixed income, stable value, large cap growth, large cap value, small/mid cap growth, small/mid cap value, international equity), and Morningstar recommends allocations to those asset classes within a set of guidelines determined by PRIAC that are keyed to participants' risk tolerance and time to retirement.[4]  (Compl. ¶¶ 9, 15; Ex. 5, W. Ord., at 3, 8, 11–12.)  Acting as a consultant to PRIAC, Morningstar reviews the asset allocations for GoalMaker and recommends changes.  (Ex. 5, W. Ord., at 1–3; Compl. ¶ 11.)  As a research consultant, Morningstar provides PRIAC with an Excel spreadsheet that has the asset-class level allocation data.  (Ex. 5, W. Ord., at 4.)  The extent to which Morningstar's recommendations are implemented—if at all—is at PRIAC's sole discretion.  (*Id.* at 2–3.)

Morningstar has no role in recommending investments in any particular mutual fund.  It does not select the set of asset classes available in the model portfolios; does not have knowledge of which funds are available through any plan; and does not evaluate or select the funds that populate the model portfolios in a particular plan.  (*See id.* at 3–4.)  Morningstar does not act as

---

[3] The contract between Morningstar and PRIAC, and other documents central to that contractual relationship, are attached as exhibits to the Amert Declaration.  (*See* Ex. 4, Consulting Services and License Agreement; Ex. 5, W. Ord.; Ex. 6, Work Order Amendment No. 1.)  They may be considered on a Rule 12(b)(6) motion because they are referenced indirectly in the complaint (Compl. ¶¶ 11, 15, 53, 55), and they are central to Green's claim.  *See Hecker v. Deere*, 556 F.3d 575, 583 (7th Cir. 2009); *Rowland v. Haven Props. LLC*, No. 5 C 1957, 2005 WL 2989901, at *3 (N.D. Ill. Nov. 7, 2005).  Public filings made with the SEC (Forms 10-K and 11-K) and Department of Labor (Form 5500) are also directly referenced in or central to the complaint (Compl. ¶¶ 36, 59–60; *see id.* ¶¶ 5–6), and the Court also "may take judicial notice of public records," such as these SEC filings.  *Yellen v. Hake*, 437 F. Supp. 2d 941, 963 n.3 (S.D. Iowa 2006); *accord Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999) (court may judicially notice public SEC filings at "the motion to dismiss stage").

[4] Morningstar was also retained to review the participant risk tolerance questionnaire and provide any recommendations.  (Ex. 5, W. Ord., at 3.)

an investment advisor to plan sponsors, participants, or investors in PIMS's products. (Compl. ¶¶ 5–6; Ex. 5, W. Ord., at 7.) Nor does Morningstar have any advisory relationship, agreement, or contact with the Plan or its participants. (Compl. ¶¶ 10, 23; Ex. 5, W. Ord., at 3–4.) For the limited work Morningstar performs (*i.e.*, providing allocation recommendations to PRIAC), it receives a flat annual fee. (Ex. 5, W. Ord., at 5; *see also* Compl. ¶ 53.) Morningstar does not receive any compensation in the form of incentive-based compensation or revenue sharing.

## ARGUMENT

Green's claim against Morningstar should be dismissed because he fails to allege that Morningstar engaged in conduct subject to RICO. Federal Rule of Civil Procedure 12(b)(6) provides that a court should dismiss a complaint that fails "to state a claim for a relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* Instead, Green must allege facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] *Id.*; *accord Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 680 (N.D. Ill. 2012) (Kendall, J.).

Additionally, Green's allegations are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Fed R. Civ. P. 9(b); *see Elias v. Stewart Title of Ill.*, No. 09 C 6773, 2010 WL 4482102, at *6 (N.D. Ill. Nov. 1, 2010) (Kendall, J.). Even for claims that

---

[5] Where Green's complaint contradicts the contract between PRIAC and Morningstar, "the contract[] trump[s] the facts or allegations presented in the [c]omplaint." *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining that "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

"are not by definition fraudulent torts, a claim that 'sounds in fraud'—one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.* (internal quotation marks omitted). Green alleges he invested in certain mutual funds due to an alleged "scheme of bad-faith concealment" of "deceptively and/or incompletely disclosed fees [for securities] taken by Defendants." (Compl. ¶¶ 17, 57; *see also id.* ¶¶ 43, 48, 72.) Thus, Green's claim must be pled with particularity; he must allege "the specific identity of the individuals" involved in the alleged scheme and the "time, place, and content of the alleged communications" made in furtherance of the alleged scheme.[6] *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (citation omitted); *see also United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014). Moreover, "in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998), *modified by Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000).

Green's RICO allegations against Morningstar do not plead, with particularity or otherwise, any claim for relief that is plausible on its face. First, Green has failed to demonstrate that he has standing to bring a RICO claim against Morningstar; second, he has failed to plead the elements of such a claim; and third, the conduct he describes could be pled as a claim for securities fraud, and therefore, cannot be the basis of a RICO claim. Accordingly, his claim against Morningstar should be dismissed.

---

[6] In his complaint, Green cites *Board of Trustees of Ironworkers Local No. 498 Pension Fund v. Nationwide Life Insurance Co.*, No. 04 C 821, 2005 WL 711977 (N.D. Ill. Mar. 28, 2005), to argue that Rule 9(b) does not apply to a RICO claim predicated on violations of 18 U.S.C. § 1954. However, in that case, plaintiffs alleged bribery and/or graft through investment managers paying kickbacks to pension plan administrators in exchange for recommending the investment managers' product. *Id.* at *1. There were no allegations of fraud.

I.      **Green Has No Standing To Assert A RICO Claim Against Morningstar.**

Green does not have standing to assert a RICO claim against Morningstar because he has not alleged he was harmed by anything Morningstar did.  A plaintiff's 18 U.S.C. § 1962(c) claim "must allege a pattern of racketeering activity for each RICO defendant."  *Holland v. Cerberus Capital Mgmt.*, No. 13-CV-00491, 2014 WL 6473479, at *8 (N.D. Ind. Nov. 18, 2014).  To establish standing against each defendant, a plaintiff must show that his alleged injury occurred "by reason of" the alleged RICO violation by that defendant.  *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 09-CV-20071, 2010 WL 3119499, at *4 (S.D. Ill. Aug. 5, 2010).  A plaintiff must show "both a proximate and but for cause of her injury."  *Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*, 214 F. Supp. 3d 675, 690 (N.D. Ill. 2016) (Kendall, J.) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006)).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza*, 547 U.S. at 461.  "A link that is too remote, purely contingent, or indirec[t] is insufficient."  *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (alteration in original; internal quotation marks omitted).

Here, Morningstar's provision of asset allocation models to PRIAC is too remote from Green's alleged injury to make it a proper RICO defendant.  Morningstar's role was to provide consulting services to the Prudential Defendants.  (*See* Ex. 5, W. Ord., at 1, 3.)  Green's alleged injury is a reduction in his retirement plan account balance as a result of being directed to Plan investment funds that allegedly charged higher fees, a portion of which were allegedly paid to the Prudential Defendants.  (Compl. ¶ 24.)  But Morningstar had nothing to do with directing Green to invest in any specific fund.  Morningstar provided PRIAC with asset allocation models

making asset class-level recommendations in Excel spreadsheets. (*See id.* ¶ 25; Ex. 5, W. Ord., at 3–4.) Morningstar did not control, or even advise on, which of the Plan's investment options were included in GoalMaker's recommendations to Green. (Ex. 5, W. Ord., at 3; *see also, e.g.*, Compl. ¶¶ 16–17.) The specific mutual funds available in the Plan were selected by Rollins, and the way GoalMaker interacted with those options was determined by Rollins or PRIAC.[7]

As in *Anza* and *Napleton's*, Green's complaint is deficient. He does not, for example, indicate that anything about the asset class-level recommendations provided by Morningstar somehow influenced his investment decisions. Accordingly, because Green has not shown (and cannot show) that his alleged injury was proximately caused by Morningstar's limited consulting role, he lacks standing to assert a RICO claim against Morningstar, and that claim should be dismissed with prejudice.

## II. Green Fails To Plead The Elements Of A RICO Claim Against Morningstar.

Green fails to plead the elements of a RICO claim against Morningstar. To state a claim under RICO, Green must allege conduct of an enterprise through a pattern of racketeering activity. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398–99 (7th Cir. 2009). Green must also allege a RICO predicate act. *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 772 (N.D. Ill. 2005). Green's claim against Morningstar lacks these elements and should be dismissed.[8]

---

[7] The Plan's 404(a) disclosures, Exhibit A to the complaint, detail the investment options available to Plan participants and specifically identify the associated fees. (Dkt. 12-1 at 3–7.) They also identify which mutual funds are included in the GoalMaker service. (*Id.* at 10.) Thus, participants are on notice of the funds included in GoalMaker and their fees as compared to other funds available to participants.

[8] As a threshold matter, Green's attempt to apply RICO to ERISA-governed relationships should be rejected. ERISA is a "comprehensive and reticulated statute," with "carefully integrated civil enforcement provisions." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (citation omitted). Courts have been "reluctant to tamper with [the] enforcement scheme" embodied in ERISA by extending remedies to those not specifically authorized in ERISA. *Id.* at 147; *see Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1032 (N.D. Ill. 2007). Applying RICO to ERISA-based claims only complicates and clashes with this "comprehensive and reticulated" regime.

**A.    Green Fails To Allege Morningstar Conducted Or Participated In A RICO Enterprise.**

Green has not adequately pled that Morningstar was part of a RICO enterprise.  Section 1962(c) of RICO provides that it is "unlawful for any ***person*** employed by or associated with any ***enterprise*** . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c) (emphasis added).  Under § 1962(c), the RICO "person" is the defendant, and to state a claim against that defendant, the plaintiff must also identify an enterprise.  *See United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853–54 (7th Cir. 2013).  A plaintiff must plead facts supporting the existence of an enterprise; a complaint's "initial allegation of a pattern of racketeering activity . . . is a legal conclusion which the Court need not, and does not, accept as true at the 12(b)(6) stage."  *Am. Med. Ass'n v. 3Lions Publ'g, Inc.*, No. 14-CV-5280, 2015 WL 1399038, at *4 (N.D. Ill. Mar. 25, 2015) (Kendall, J.); *Petit v. Wash. Mut. Bank, F.A.*, No. 12-CV-318, 2012 WL 3437287, at *3 (N.D. Ill. Aug. 14, 2012) (Kendall, J.).

Green alleges that the relevant RICO enterprise consists of an association-in-fact among the defendants.  (Compl. ¶ 45.)  The Supreme Court has held that an "association-in-fact" enterprise requires (among other things) both a common purpose and relationships among those associated with the alleged enterprise.  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  But this definition is not limitless.  *United Food*, 719 F.3d at 853.  Section 1962(c) "requires a plaintiff to identify a 'person'—*i.e.*, the defendant—that is ***distinct*** from the RICO enterprise." *Id.* (emphasis added).  Thus, a plaintiff must allege not only that multiple defendants were involved in the conduct complained about, but that they jointly conducted a RICO enterprise.  *Id.* at 854.  For example, in Guaranteed Rate, this Court dismissed the plaintiff's complaint:

> [T]here is no indication in the Amended Complaint that the RICO
> Defendants shared in the profits of the alleged enterprise as opposed
> to merely taking their own respective profits from their respective
> actions related to the scheme. . . . Put another way, [the plaintiff]
> fails to demonstrate that the RICO Defendants participated in the
> conduct of the enterprise's affairs, not just their own affairs.

912 F. Supp. 2d at 687; *accord Oberoi v. Mehta*, No. 10-CV-7275, 2011 WL 1337107, at *4

(N.D. Ill. Apr. 6, 2011) (Kendall, J.).

Similarly, in *United Food*, the plaintiff health insurer alleged that a drug manufacturer

and a pharmacy company "conducted an association-in-fact RICO enterprise" for the purpose of

overcharging insurers for certain generic drugs. 719 F.3d at 853. The insurer defined the

"enterprise" as an "entity consisting of [the pharmacy], [the manufacturer], and management

personnel from the two companies." *Id.* at 854. To satisfy the common purpose and relationship

requirements of *Boyle*, the insurer pointed to profits as the common purpose, and

communications between the two defendants and the pharmacy's sales of the manufacturer's

drugs as the relationship. *Id.* The Seventh Circuit affirmed the district court's dismissal, holding

that the insurer's allegations did nothing more than describe what the two defendants did "in

their individual capacities, to advance their individual self-interests." *Id.* The complaint lacked

allegations that "officials from either company involved themselves in the affairs of the other,"

or that profits from the alleged scheme were "siphoned off to the [alleged] enterprise or to

individual enterprise members." *Id.* at 854–55. The allegations "show[ed] only that the

defendants had a commercial relationship, not that they had joined together to create a distinct

entity for purposes of [the alleged scheme]." *Id.* at 855.

Green's claim fails for the same reasons. Green alleges "the RICO racketeering

enterprise at issue here" is based on "Defendants' so-called 'investment advice' program."

(Compl. ¶ 3.) The alleged racketeering enterprise Green describes centers on Morningstar

"regularly consult[ing] with the Prudential Defendants." (*Id.* ¶ 23.) Green alleges that "PRIAC . . . manages the operation of GoalMaker as to the Plans and the Plans' participants," so that it directs retirement plan participants to plan investment options that result in "windfall" "revenue sharing payments to the Prudential Defendants."[9] (*Id.* ¶¶ 23, 24, 25.) Green alleges that GoalMaker was configured in this manner "for the purpose of providing additional and effectively hidden compensation ***to the Prudential Defendants***"—and not Morningstar—from Green's retirement Plan balance. (*Id.* ¶ 43 (emphasis added); *see also id.* ¶ 24.) The only compensation Morningstar is alleged to receive is the "development and consulting fees" PRIAC pays it for creating asset allocation models. (*Id.* ¶ 53; Ex. 5, W. Ord., at 5.)

Accordingly, Green alleges nothing more than that the Prudential Defendants and Morningstar had a business relationship through which they pursued their individual interests. Like the defendants in *United Food*, Morningstar merely performs its contractual role. The Prudential Defendants provide GoalMaker as an elective option to retirement plans (Compl. ¶ 8), and Morningstar "provides consulting services to Prudential" and—as Green concedes—is "in no way" an "investment advisor to investors of Prudential's products or services" like Green (*id.* ¶ 11). Moreover, as in *United Food*, there are no allegations suggesting a common purpose. The Prudential Defendants are alleged to be pursuing revenue sharing payments from investment managers, while Morningstar is alleged to be pursuing a set fee from PRIAC (*id.* ¶¶ 22, 57), and nowhere does Green allege that any of the money any defendant receives is siphoned off to the

---

[9] Although Green labels revenue sharing as "kickbacks" (*e.g.*, Compl. ¶ 24), revenue sharing is a widely recognized and widely accepted means of defraying the expenses of administering a retirement plan. ***See Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 15-CV-1839, 2016 WL 7494320, at *10 (D. Conn. Dec. 30, 2016)** ("[C]ourts across the country have generally found that the practice of revenue-sharing does not, in principle, constitute an ERISA violation"), *appeal docketed*, No. 17-239 (2d Cir. Jan. 23, 2017); *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (stating that revenue sharing is a "common and 'acceptable' investment industry practice[] that frequently inure[s] to the benefit of ERISA plans").

so-called enterprise.  *Cf. United Food*, 719 F.3d at 854–55.  As a result, Green has not

sufficiently alleged a RICO enterprise with respect to Morningstar.

### B.       Green Fails To Plead A Predicate Act.

Green has not pled a predicate act, which is required to state a claim under RICO.  As

discussed above, a "pattern of racketeering activity" is a prerequisite to any claim under RICO.

18 U.S.C. § 1961.  To demonstrate a pattern of racketeering activity, Green must allege that

Morningstar engaged in at least two predicate acts of racketeering activity within a ten-year

period, 18 U.S.C. § 1961(5), and demonstrate a sufficient relationship and continuity among

those predicate acts.  *Starfish Inv. Corp.*, 370 F. Supp. 2d at 769–70.  Green alleges that the

requisite predicate act is conduct related to unlawful welfare and pension fund payments under

18 U.S.C. § 1954.  (Compl. ¶ 47.)

Section 1954 precludes certain persons, including those who provide services to an

employee pension plan, from receiving "any fee, kickback, commission, gift, loan, money, or

thing of value because of or with intent to be influenced with respect to, any of the actions,

decisions, or other duties relating to any question or matter concerning such plan."  18 U.S.C.

§ 1954.  However, the statute explicitly does *not* prohibit the payment or acceptance of a "bona

fide salary, compensation, or other payments made for . . . services actually performed."  *Id.*

Thus, to plead a violation of § 1954, a plaintiff must allege: (1) the relevant plan is subject to

ERISA; (2) the recipient of the fees is a person who provides benefit plan services or is an

administrator, officer, trustee, or other agent of the plan; and (3) the recipient received the non-

bona fide fees either (a) with the intent to be influenced in their actions relating to the plan when

they received the fees (bribery) or (b) because of those actions (graft).  *Id.*; *Total Renal Care,*

*Inc. v. Coalition Am., Inc.*, No. 08-CV-2629, 2009 WL 10670649, at *1, *3 (N.D. Ga. June 12, 2009).  Green fails to plead these elements.[10]

  **First**, Green has not pled that Morningstar provides services to the Plan.  Green contends, without any supporting factual allegations, that Morningstar qualifies as a "'person[] who . . . provides benefit plan services' to the . . . Rollins Plan" under § 1954.  (Compl. ¶ 52.)  This bare assertion is insufficient to establish a predicate act.  As discussed *supra*, Morningstar does not provide any services to the Plan; it provides services to PRIAC.  (*See* Ex. 2, 2016 Form 5500, July 13, 2017, Schedule C, at 3-1, 3-2 (identifying entities other than Morningstar as service providers).)  Morningstar's contract for services with PRIAC is limited in scope to providing asset class allocation recommendations for GoalMaker within a set of guidelines provided by PRIAC, which are implemented at the sole discretion of PRIAC.  (Ex. 5, W. Ord., at 2.)  Morningstar has no relationship with the Plan or its participants.  Indeed, Green does not even allege that Morningstar had any communication with the Plan sponsor or participants, and its limited consulting arrangement with PRIAC is too attenuated from the Plan to constitute "provid[ing] benefit plan services."[11]  Thus, Green has not pled a predicate act under § 1954 with

---

[10] Green similarly fails to state a claim that Morningstar is liable under § 1962(d) for engaging in a conspiracy to violate § 1962(c).  Although Green alleges that defendants' "concealment of the bad-faith scheme" constitutes a RICO conspiracy (Compl. ¶ 72), Green fails to plead both that Morningstar (a) agreed to conduct or participated in the affairs of the alleged enterprise and (b) agreed to the commission of the predicate acts.  *See Domanus v. Locke Lord LLP*, 847 F.3d 469, 479–480 (7th Cir. 2017) (dismissing claims for a § 1962(d) violation where defendants were not alleged to have personally known about the essential scope and nature of the alleged conspiracy).  Green alleges only that Morningstar engaged in the utterly non-conspiratorial act of charging a fee for consulting services rendered to PRIAC.

[11] Morningstar also is not a "Covered Service Provider" to the Plan under § 408(b)(2) of ERISA, which requires retirement plan service providers to give plan sponsors disclosures about the services they provide to the plan and the compensation they expect to receive.  The Department of Labor defines "Covered Service Providers" only to include: (1) plan fiduciaries; (2) registered investment advisers providing services to a plan or its participants; (3) record-keepers or brokers who make designated investment alternatives available to the covered plan; and (4) certain other service providers, such as

respect to Morningstar.  *See* *Total Renal Care*, 2009 WL 10670649, at *1, 3 (holding plaintiff failed to allege a predicate act where it pled no factual support for its assertion that "middleman" defendant acted as agent for ERISA plan).

*Second*, even if Morningstar provided services to the Plan (which it does not), Green does not allege that Morningstar received improper fees or kickbacks.  He asserts that the "development and consulting fees Morningstar received as a result of developing GoalMaker" amount to § 1954 "kickbacks," "money," and/or other "things of value."  (Compl. ¶ 53.)  But he pleads no facts that could support an inference that those fees are anything other than lawful compensation explicitly permitted by § 1954.  As discussed, Morningstar receives only a flat annual fee for consulting services it performs for PRIAC.  (*See* Ex. 5, W. Ord., at 5.)  Green does not allege that the fee was suspiciously large, or that it was increased if PRIAC received more in revenue sharing payments.  Thus, the "development and consulting fees" Green alleges are merely bona fide compensation resulting from "two independent entities agree[ing] between themselves as to the payment to be made for services rendered."[12]  *Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir. 1991).

*Third*, Green fails to allege that Morningstar had the requisite intent to transform its bona fide fees into unlawful kickbacks.  Section 1954 prohibits (1) those with decision-making authority over ERISA plans, such as trustees, from receiving kickbacks "because of or with intent to be influenced with respect to" those plans, *see United States v. Lopreato*, 83 F.3d 571, 573 (2d Cir. 1996), and (2) plan service providers and others from "directly or indirectly giv[ing]

---

accountants or attorneys, who reasonably expect to receive "indirect compensation."  29 C.F.R. § 2550.408b–2(c)(iii) (2012).  Morningstar is not alleged to have performed any of these roles.

[12] Moreover, Green's allegations regarding a failure to disclose pertain exclusively to the revenue sharing fees allegedly received by the Prudential Defendants—not Morningstar.  (*See, e.g.*, Compl. ¶¶ 57–61.)

or offer[ing]" those kickbacks, *see United States v. Black*, No. S4 00 CR. 632, 2002 WL 460063, at *6 (S.D.N.Y. Mar. 26, 2002). In short, § 1954 prohibits receiving or giving kickbacks by or to individuals with control over a plan.

Green alleges no such conduct. First, Green alleges that GoalMaker was intended to influence retirement plan investors like himself—not plan trustees. (Compl. ¶ 85 ("Defendants, through their Enterprise, have violated 18 U.S.C. § 1954 by repeatedly using the GoalMaker program to influence retirement plan participants to choose expensive investment options that pay revenue sharing kickbacks to the Prudential Defendants."); *see also id.* ¶¶ 12, 22, 65.) Second, the revenue sharing payments were made not to the plans' fiduciaries, but to the Prudential Defendants. Green's allegations appear to describe, at best, an attempt to influence plan participants' investment selections to increase revenue sharing payments from investment managers (who are not alleged to even be aware of GoalMaker) to PRIAC. That is not bribery and that is not graft, and thus, § 1954 does not apply. Because Green has not adequately alleged the elements of a RICO claim against Morningstar, his claim against it should be dismissed.

## III. Green Cannot Allege A Predicate Act Under RICO Because His Allegations Sound In Securities Fraud.

Green's complaint should also be dismissed because it impermissibly relies on conduct subject to federal securities laws as a predicate act. The "plain text of § 1964(c), as amended [in 1995 by the Private Securities Litigation Reform Act], clearly and unambiguously states that 'no person may rely' on securities fraud as a predicate act" for purposes of RICO. *Scott v. Steingold*, No. 97-CV-7871, 1998 WL 704287, at *5 (N.D. Ill. Sept. 30, 1998). In *Scott*, for example, a group of investors alleged, in support of a RICO claim, that the defendants sold shares of securities through "affirmative[] misrepresent[ations]," "omitting material information" about their backgrounds, and failing to disclose "outrageously high commissions" that they would

14

receive in connection with the sales. *Id* at *1. The court dismissed the RICO claims with prejudice in light of the PSLRA's bar. *Id.* at *5. Here, the essence of Green's complaint is that he invested in certain mutual funds (which are securities) due to an alleged "scheme of bad-faith concealment" of "deceptively and/or incompletely disclosed fees [for securities]" paid to PRIAC, and that the alleged scheme "caused injury to [his] . . . money and property." (Compl. ¶¶ 17, 24, 57.) Therefore, his RICO claim is barred.

## CONCLUSION

Green's claim against Morningstar should be dismissed with prejudice.

Dated: August 25, 2017

Respectfully submitted,

MORNINGSTAR, INC.

By: _____/s/ Craig C. Martin_____

JENNER & BLOCK LLP
Craig C. Martin (6201581)
Amanda S. Amert (6271860)
Howard S. Suskin (6185999)
353 N. Clark Street
Chicago, Illinois 60654
Tel: (312) 923-2776
Fax: (312) 840-7776
Email: CMartin@jenner.com
Email: AAmert@jenner.com
Email: HSuskin@jenner.com

*Attorneys for Defendant Morningstar, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on August 25, 2017, a true and correct copy of **Morningstar, Inc.'s Memorandum of Law in Support of its Motion to Dismiss** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated:  August 25, 2017

By:  _____/s/ Craig C. Martin_____
Craig C. Martin
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
Tel: (312) 923-2776

*Attorney for Defendant Morningstar, Inc.*