## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

## EASTERN DIVISION

| | |
|---|---|
| MICHAEL D. GREEN, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.1:17-cv-05652 |
| Plaintiff, | |
| v. | Hon. Virginia M Kendall |
| MORNINGSTAR, INC., PRUDENTIAL INVESTMENT MANAGEMENT SERVICES LLC, AND PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY, | |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO THE PRUDENTIAL DEFEDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I.     INTRODUCTION………………………………………………….......................1

II.    OVERVIEW OF FACTUAL ALLEGATIONS IN THE COMPLAINT…………………2

III.   ARGUMENT…………………………………………………………………...3

       A.     Rule 8's Pleading Standard Applies to the Complaint……………………………3

       B.     Plaintiff has Properly Alleged the Elements of a RICO Claim Against Prudential.6

              1.  Plaintiff Has Properly Alleged the Commission of a RICO "Predicate Act".....6

              2.  Plaintiff Has Properly Alleged the Conduct of a RICO Enterprise Through
                  Pattern of Racketeering Activity……………………………………………8

              3.  Plaintiff Has Alleged RICO Standing…………………………………………12

IV.    CONCLUSION…………………………………………………………………...15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)…………………………………………………….……3, 6

*Associates in Adolescent Psychiatry, S.C. v. Home Life Insurance Co.,*
    941 F.2d 561 (7th Cir. 1991)…………………………………………………7-8

*BCS Services, Inc. v. Heartwood 88, LLC,*
    637 F.3d 750 (7th Cir. 2011)…………………………………………….………15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)……………………………………………………………3, 6

*Bible v. United Student Aid Funds, Inc.,*
    799 F.3d 633, 656 (7th Cir. 2015)…………………………………….……11

*Board of Trustees of Ironworkers Local No. 498 Pension Fund v. Nationwide Life Ins. Co.,*
    No. 04 C 821, 2005 WL 711977 (N.D. Ill. March 28, 2005)………………….………passim

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639 (2008)……………………………………………………....…14

*Brown v. Cassens Transp. Co.,*
    546 F.3d 347 (6th Cir. 2008)…………………………………………….………13

*Cohen v. Am. Sec. Ins. Co.,*
    735 F.3d 601 (7th Cir. 2013)…………………………………………....…7

*Colfax Corp. v. Ill. State Toll Highway Auth.,*
    79 F.3d 631 (7th Cir. 1996)………………………………………………………..3

*Folstad v. Harmon,*
    No. 86 C 4667, 1987 WL 6581 (N.D. Ill. Feb. 11, 1987)…………………………………5

*Guaranteed Rate, Inc. v. Barr,*
    912 F. Supp. 2d 671 (N.D. Ill. 2012)……………………………………………12

*Hemi Group, LLC v. City of New York,*
    559 U.S. 1 (2010)…………………………………………………..…….14

*Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.,*
    804 F.3d 826 (7th Cir. 2015)………………………………………..…………3

*In Re Avandia Marketing, Sales Practices & Product Liability Litigation,*
    804 F.3d 633 (3d Cir. 2015)……………………………………………………12, 14

*In re Neurontin Marketing & Sales Practices Litig.,*
    712 F.3d 21 (1st Cir. 2013)……………………………………………………14

*Limestone Development Corp. v. Village of Lemont, Ill.,*
    520 F.3d 797 (7th Cir. 2008)…………………………………………………...9

*Mehling v. New York Life Ins. Co.,*
    163 F. Supp. 2d 502 (E.D. Pa. 2001)…………………………………...………7

*Menzies v. Seyfarth Shaw LLP,*
    197 F. Supp. 3d 1076 (N.D. Ill. 2016)……………………………………...…….11

*Napleton's Arlington Heights Motors, Inc. v. FCA US LLC,*
    214 F. Supp. 3d 675 (N.D. Ill. 2016)……………………………………….……15

*Nat'l Elec. Benefit Fund v. Heary Bros. Lightning Protection Co.,*
    931 F.Supp. 169 (W.D.N.Y. 1995)…………………………………………..…N.Y.4

*New England Carpenters Health & Welfare Fund v. Abbott Labs.,*
    No. 12 CV 1662, 2014 WL 4783833 (N.D. Ill. Sept. 25, 2014)…………………………12

*Oberoi v. Mehta,*
    No. 10 C 7275, 2011 WL 1337107 (N.D. Ill. Apr. 6, 2011)………………………………9

*Olson v. Champaign Cnty.,*
    784 F.3d 1093 (7th Cir. 2015)…………………………………………………3

*Richmond v. Nationwide Cassel L.P.,*
    52 F.3d 640 (7th Cir. 1995)……………………………………………………8

*Ris v. Bedell,*
    699 F. Supp. 429 (S.D.N.Y. 1988)…………………………………………..……4

*Rosen v. Prudential Ret. Ins. & Annuity Co.,*
    No. 15-CV-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016)…………………………5

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.,*
    192 F. Supp. 3d 963 (N.D. Ill. 2016)…………………………………….……15

*United Food & Commercial Workers Unions & Employers Midwest Health Benefits Bund v. Walgreen Co.,*
    719 F.3d 849 (7th Cir. 2013)……………………………………………………11

*U.S. v. Friedland*,
   660 F.2d 919 (3d Cir. 1981)……………………………………………………5

*U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*,
   772 F.3d 1102 (7th Cir. 2014)…………………………………………...…4-5

*U.S. v. Jones*,
   455 F.3d 134 (2d Cir. 2006)…………………………………………...……9

*U.S. v. Rogers*,
   89 F.3d 1326 (7th Cir. 1996)…………………………………………..….…8

*U.S. v. Schwimmer*
   700 F.Supp. 104 (E.D.N.Y. 1988)……………………………………...….…6

**Statutes and Rules**

18 U.S.C. § 1954……………………………………………………………………4-7

18 U.S.C. §§ 1961 *et seq*…………………………………………………………2

18 U.S.C. 1961(4)………………………………………………………...……8, 10

Fed. R. Civ. P. 8(a)(2)……………………………………………………………3

Fed. R. Civ. P. 9(b)……………………………………………………..………3-4, 6

## I.  INTRODUCTION

Plaintiff, through his counsel, submits this brief in opposition to Defendants Prudential Investment Management Services LLC and Prudential Retirement Insurance and Annuity Company's (collectively, "Prudential") motion to dismiss.

Plaintiff's Complaint alleges in detail that the Prudential Defendants along with Morningstar, Inc. ("Morningstar") entered into and operated a racketeering enterprise. They did this specifically to develop and then market and use their GoalMaker robo-adviser to influence Plaintiff, other retirement investors and the retirement plans through which they invested. As developed, marketed and maintained jointly by Morningstar and the moving Prudential Defendants here, GoalMaker influenced Plaintiff and what his complaint refers to as the Plans to choose the most expensive investment options made available through GoalMaker so that Prudential could reap windfall fees and Morningstar could stay gainfully employed rigging what was supposed to be an "unbiased" investment selection program. Defendants marketed GoalMaker as an "investment advice" program but never clearly disclosed the true purpose and mechanism of the biased GoalMaker program to Plaintiff or the other investors. Nor did Defendants ever meaningfully disclose to Plaintiff and the proposed Class he would represent the nature and extent of the revenue sharing and development and consulting fees that Defendants received incident to the GoalMaker program.

Plaintiff and the proposed Class were never told that the "unbiased" software program designed by Defendants to help allocate their retirement investments included investment options like the Goldman Sachs Mid Cap Value Fund that paid Prudential (and their retirement plan sponsors) revenue sharing fees while eliminating much lower cost funds like Vanguard Mid Cap Index Fund that did not pay Prudential and the Plans revenue sharing fees. Plaintiff and other

retirement investors in the proposed Class would have paid lower fees had the Prudential Defendants and Morningstar not together thus built and configured GoalMaker to, in a word, swindle Plaintiff and the proposed Class.

Plaintiff alleges these facts, which rise to a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, with sufficient detail to meet the pleading requirements under the Federal Rules of Civil Procedure.

## II. OVERVIEW OF FACTUAL ALLEGATIONS IN THE COMPLAINT

Defendants supplied Plaintiff, his retirement plan, and other retirement plans (called "the Plans" in the Complaint and here also) with an automated investment advice program called GoalMaker. (Compl. ¶ 2.) GoalMaker steers the Plans and their retirement investors, including Plaintiff, into high-cost investment options that pay unwarranted fees to the Prudential Defendants and spin off ill-gotten software development and consulting revenues to Morningstar. (*Id.* ¶ 4.)

GoalMaker is sold as a computerized asset allocation program based on "Morningstar's technology" that automatically allocates a plan investor's account among various plan investment options based on the investor's age, income, savings rate and other data. (Compl. ¶¶ 9-10.) Prudential worked with Morningstar to configure GoalMaker to limit the investment choices otherwise available to plan investors, and to steer those investors into high-cost retirement funds that kick back excessive fees to Prudential, by eliminating lower-cost options from being considered by GoalMaker. (*Id.* ¶ 12.) This is despite the fact that GoalMaker is described as based on "unbiased asset allocation modeling." (*Id.* ¶ 14.)

For example, in Plaintiff's retirement plan, the Rollins Retirement Plan ("the Rollins Plan"), of the sixteen designated investment alternatives (not including the Rollins Stock Fund),

only seven are used by the GoalMaker program. (Compl. ¶ 19.) This subset of investment options available through GoalMaker has far higher expense ratios (*i.e.*, fees paid by investors like Plaintiff and the proposed Class) and pays revenue sharing "kickbacks" to Prudential as compared to the investment options ***not*** available through GoalMaker. (*Id.* ¶¶ 20-21.) These fees and kickbacks were paid by Plaintiff and other retirement investors because they reduced their retirement plan account balances. (*Id.* ¶ 24.)

## III. ARGUMENT

### A. Rule 8's Pleading Standard Applies to the Complaint

Federal Rule of Civil Procedure Rule 8(a)(2) – which applies here, as modified by the well-known *Twombly* and *Iqbal* decisions – is a pleading standard requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleader's responsibility is to state a claim for relief that is plausible on its face. Plausibility does not mean probability: a court reviewing a 12(b)(6) motion must 'ask itself ***could*** these things have happened, not ***did*** they happen.' The standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832–33 (7th Cir. 2015) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007); *Olson v. Champaign Cnty.,* 784 F.3d 1093, 1098 (7th Cir. 2015)). The court must also accept all well-pleaded factual allegations in the light most favorable to the plaintiff. *Colfax Corp. v. Ill. State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir. 1996).

Prudential's argument that pleading standards for fraud under Federal Rule of Civil Procedure 9(b) apply to Plaintiff's claims is just wrong. Rule 9(b) does not apply to RICO claims

when the RICO "predicate act" alleged is a violation of Section 1954, as it is here. Plaintiff's Complaint specifically cites this Court's holding in *Board of Trustees of Ironworkers Local No. 498 Pension Fund v. Nationwide Life Ins. Co.*, No. 04 C 821, 2005 WL 711977, at *3 (N.D. Ill. March 28, 2005) (herein "*Ironworkers*"), another RICO case involving a defined contribution retirement plan's "revenue sharing" practices. In *Ironworkers*, this Court refused to dismiss a RICO complaint with similar facts, expressly holding that Rule 9(b) specificity is not required in such cases. This Court explained, "Defendants fail to provide, and the Court has not found, any authority to support the contention that RICO complaints alleging predicate acts of . . . unlawful employee pension fund payments, *see* 18 U.S.C. § 1954, must meet the heightened pleading standard for fraud under Rule 9(b)." *Ironworkers,* 2005 WL 711977, at *3. *See also Nat'l Elec. Benefit Fund v. Heary Bros. Lightning Protection Co.,* 931 F.Supp. 169, 191 (W.D.N.Y. 1995) ("the predicate acts alleged, while sounding in fraud, are based on federal and state statutes with specific proscriptions against extortionate or other illegal conduct, not on the mail or wire fraud statutes which normally invoke the pleading requirements of Rule 9(b) in the context of RICO"); *Ris v. Bedell*, 699 F. Supp. 429, 434 (S.D.N.Y. 1988) (discussing RICO section 1954 claim under Rule 8 pleading standard).

Tellingly, Prudential does not discuss *Ironworkers* in its dismissal papers. Ostensibly referring to *Ironworkers* and *National Electric Benefit Fund*, Prudential merely states in a footnote, ". . . two district courts have concluded that Rule 9(b) does not apply to RICO claims based on Section 1954. (Compl. ¶ 57.) Those decisions, however, pre-date the Seventh Circuit's decision in *Grenadyor* and contain cursory discussions that are not persuasive." Like the defendants in *Ironworkers,* Prudential fails to provide any authority that RICO claims based on Section 1954 require heightened pleading. Furthermore, *Grenadyor* is clearly distinguishable.

4

The plaintiff in *Grenadyor* alleged that the defendant pharmacy submitted fraudulent claims to the federal and state governments, in violation of the False Claims Act. *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.,* 772 F.3d 1102, 1104 (7th Cir. 2014). The facts and claims in *Grendyor* are very different from those alleged here. *Folstad v. Harmon*, No. 86 C 4667, 1987 WL 6581, at *3 (N.D. Ill. Feb. 11, 1987), is likewise unpersuasive because it was decided almost 20 years before *Ironworkers* and is not specific to Section 1954 claims like *Ironworkers*.

Prudential likewise uses the wrong standard when it highlights a district court case from Connecticut, *Rosen v. Prudential Ret. Ins. & Annuity Co*., No. 15-CV-1839, 2016 WL 7494320, at *10 (D. Conn. Dec. 30, 2016). *Rosen* held that ***ERISA*** did not apply to claims against Prudential for self-dealing through revenue-sharing payments in exchange for investing plan assets in mutual funds, and the inclusion of Prudential's GoalMaker product in the plan at issue in that case. *Id.* Prudential's arguments relying on *Rosen* are immaterial, because the ERISA precedent in *Rosen* does not apply to Plaintiff's RICO claims in the instant matter. The court in *Rosen* dismissed the claims regarding GoalMaker because it found that Prudential was not a fiduciary under ERISA. *Id.* at *8. There are no such fiduciary status requirements under RICO.[1] *See e.g., United States v. Friedland*, 660 F.2d 919, 925-26 (3d Cir. 1981) ("one could be among the class of persons whose actions are proscribed by s[ection] 1954 even though one has no fiduciary relationship to the employee benefit plan.") (internal citation omitted). At the risk of noting the obvious, some conduct can be subject to RICO yet not be subject to ERISA and vice versa, even where a RICO predicate act provision like Section 1954 indirectly references ERISA.

---

[1] Regardless of whether it was a fiduciary, Prudential did have the ability to control investment decisions of the Plans. (Compl. ¶ 51.) Prudential's defense that Plan sponsors selected which funds would be included and which funds would be excluded from consideration by GoalMaker strains credulity and merely raises a substantial dispute of a material fact, despite Defendants' submission of the self-serving document included as Exhibit 2 to its Memorandum.

At any rate, because Rule 9(b) specificity is not required here, the Court must look at the Complaint under the more liberal pleading standards of Rule 8 as it has been construed in recent years, of course, by *Twombly*, *Iqbal* and their progeny (which are cited above).[2] And the allegations in the Complaint clearly satisfy this standard as set forth below.

**B.     Plaintiff has Properly Alleged the Elements of a RICO Claim Against Prudential**

Prudential asserts that dismissal is warranted because Plaintiff has not cognizably alleged either (1) a RICO predicate act or (2) a viable RICO enterprise. These arguments fail in light of this Court's decision in *Ironworkers*. In that case, which involved a similar RICO claim, this Court rejected the very same dismissal arguments Prudential makes here.

**1.   *Plaintiff Has Properly Alleged the Commission of a RICO "Predicate Act"***

Just as in *Ironworkers*, Plaintiff here has properly pleaded that Defendants violated 18 U.S.C. § 1954. As *Ironworkers* notes, Section 1954 prohibits both the receiving and giving of "any fee, kickback, commission, gift, loan, money or thing of value" to individuals with the ability, or apparent ability, to influence the operation of employee benefit plans. 18 U.S.C. § 1954. 18 U.S.C. § 1954 is not violated, however, by the payment of a "*bona fide* salary, compensation, or other payments made for goods or facilities actually furnished or for services actually performed in the regular course of [a defendant's] duties." *Id.* Failure to disclose a payment precludes a finding that it was *bona fide* under section 1954. *See United States v. Schwimmer,* 700 F.Supp. 104, 107 (E.D.N.Y. 1988).

---

[2] Even if Rule 9(b) were applicable, the Complaint does discuss the kickbacks with specificity, including that Prudential received the monetary kickbacks from the Plaintiff and other plan investors' retirement savings by causing these investors to pay higher expense ratios for funds that would in turn pay Prudential for being included in GoalMaker. Morningstar indirectly received money from the kickbacks for its continued engineering of the GoalMaker program. Defendants' decision of what funds to include in GoalMaker was therefore influenced by the kickbacks. (Compl. ¶¶ 19-24.) This scheme occurred for at least the duration of the Class Period and continues to date. (Compl. ¶ 73.)

As in *Ironworkers*, Plaintiff here has alleged that the commissions and fees were in fact not disclosed to Plaintiff and the proposed Class. (Compl. ¶¶ 57-61.) Furthermore, as in *Ironworkers*, Plaintiff's allegations in the Complaint state that Defendants actively participated in the non-disclosure of revenue sharing-related commissions and fees. *Id.* Many of the cases Prudential relies on are distinguishable because there was no issue of non-disclosure in those cases. *See, e.g.., Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 609 (7th Cir. 2013) ("The substance of the transaction was clearly and fully disclosed; no material fact was omitted."); *Mehling v. New York Life Ins. Co.,* 163 F. Supp. 2d 502, 508 (E.D. Pa. 2001) ("The mutual fund expenses . . . were disclosed to the shareholders and to the SEC. Consequently, the fees . . . fall within the 'bona fide compensation exception' to Section 1954.").

The Prudential Defendants argue in a footnote that they did provide disclosures of revenue sharing payments here.[3] But – again, tellingly – Prudential never asserts that it (or Morningstar, for that matter) anywhere ever disclosed to Plaintiff or anyone else that using GoalMaker would steer the user into high-fee retirement investments that pay revenue sharing kickbacks to the Prudential Defendants and plan sponsors (and fuel in the process Morningstar's maintenance and further development of GoalMaker). That, frankly, is a disclosure that might be dispositive of the instant motion practice in favor of Defendants had it been made. But it never was, and the Prudential Defendants never say that it was. This is no surprise – if they clearly made that kind of disclosure, no retirement investor would ever elect to use GoalMaker to pick their retirement investments for them.

The Prudential Defendants' discussion of *Associates in Adolescent Psychiatry, S.C. v. Home Life Insurance Co.*, 941 F.2d 561 (7th Cir. 1991) is likewise inapt. The court there found

---

[3] It is noteworthy that none of the Plan's DOL Form 5500 filings include any disclosure of Prudential's indirect compensation received from the Plan's investment funds.  And the 408(b)(2) disclosure referenced in Defendant's Memorandum at 4 is not provided to participants.

no predicate act – no kickback – because there was no allegation that defendant received the float as "inducement to perform some illegitimate act." *Id.* at 570. Here, Plaintiff clearly alleges a kickback scheme: namely, that the Prudential Defendants would receive the revenue-sharing kickback fees in return for placing those retirement investment funds that paid revenue-sharing fees in GoalMaker as designed by Morningstar to be an "unbiased" investment tool and eliminating those funds that paid no revenue sharing – all of this so that Plaintiff and the propsed Class, needing investment advice, would rely on GoalMaker not knowing that the program artificially selected those more expensive funds. (Compl. ¶¶ 15-17, 19-25, 37-43.)

### 2. *Plaintiff Has Properly Alleged the Conduct of a RICO Enterprise Through a Pattern of Racketeering Activity*

Also like the plaintiff in *Ironworkers*, Plaintiff here has properly alleged that the association-in-fact in this case is a RICO enterprise consisting of the named Defendants. RICO defines an "association-in-fact" enterprise as a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. 1961(4). A RICO enterprise, including a so-called association-in-fact enterprise like the one alleged in this case, has "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir. 1995). "The continuity of an informal enterprise and the differentiation among roles can provide the requisite 'structure' to prove the element of 'enterprise.'" *United States v. Rogers,* 89 F.3d 1326, 1337 (7th Cir. 1996). An alleged association-in-fact enterprise must have a common purpose of engaging in a course of conduct. And finally, the defendants in the alleged enterprise must have conducted or participated in the conduct of the enterprise's affairs, not just their own affairs.

Plaintiff has properly alleged each of these factors in this case, thereby satisfying RICO's

enterprise pleading requirements. First, as in *Ironworkers*, Plaintiff here has alleged facts consistent with an ongoing enterprise structure. Plaintiff has identified a clear division of labor between Morningstar and Prudential, and detailed how that structure is ongoing and tailored to a common purpose. (Compl. ¶¶ 8, 10-12, 16, 18, 23 (describing differentiated functions between and division of labor among Morningstar and the Prudential enterprise members).) *See Limestone Development Corp. v. Village of Lemont, Ill.,* 520 F.3d 797 (7th Cir. 2008) (conspiring personnel having differentiated functions is indicative of RICO enterprise structure); *United States v. Jones*, 455 F.3d 134, 144-45 (2d Cir. 2006) (division of labor is indicative of RICO enterprise structure). Plaintiff's allegations of Morningstar and Prudential's distinct participation in the enterprise are express and explicit, and thus very different than the allegations of the plaintiffs in *Oberoi v. Mehta*, No. 10 C 7275, 2011 WL 1337107, at *4 (N.D. Ill. Apr. 6, 2011), who provided no details regarding the structure of an enterprise.

Second, and again as in *Ironworkers*, Plaintiff here has properly alleged that Morningstar and Prudential, in working through their revenue-sharing association-in-fact, shared a common purpose. (Compl. ¶¶ 25, 52, 65, 71 (describing common purpose as being systematically to influence retirement plans and their investors to invest in high-cost retirement funds featuring revenue-sharing fees through GoalMaker "in order to send a windfall of unwarranted fees to the Prudential Defendants and, indirectly, to their business partner, Morningstar").) *See Ironworkers*, 2005 WL 711977, at *5 ("Therefore, as pleaded, this mutually beneficial revenue sharing arrangement is a sufficient allegation of a common purpose.").

Next, Plaintiff here, like the plaintiff in *Ironworkers*, has adequately alleged the existence of a relationship between the Defendants that is "amenable to consensual or hierarchical decision-making" to affect the purposes of the association-in-fact. *Ironworkers*, 2005 WL

9

711977, at \*5. Again, Plaintiff has alleged in detail how Morningstar and Prudential worked together to build and modify GoalMaker, and then maintain and market it systematically to Plaintiff and the Plans in order to make fee money via improper influence, and by requiring Plan sponsors to restrict the number of investment choices to be considered by GoalMaker. (*See, e.g.,* Compl. ¶¶ 4, 12, 15, 16, 23.) This could have not happened had Defendants not been able to manage their joint GoalMaker-related undertaking by either consensus or hierarchy.

Finally, as in *Ironworkers*, Plaintiff here has properly alleged that Prudential conducted (or participated in conducting) the affairs of the association-in-fact enterprise. Specifically, Plaintiff alleges (just as the plaintiffs in *Ironworkers* alleged) that Prudential, through the association-in-fact, entered into contracts with various retirement plans, which were influenced improperly to do business with Defendants by the revenue-sharing payments at issue. (Compl. ¶¶ 4, 16, 52, 64 (describing how the Prudential Defendants enticed retirement plan sponsors to direct retirement funds to the Prudential Defendants through GoalMaker, and the promotion of revenue sharing payments).) *See Ironworkers*, 2005 WL 711977, at \*5 ("In order to entice third-party [retirement plan sponsors] to direct funds to Defendants, the fees which Defendants took from the individual participant accounts were used by Defendants to pay themselves for whatever services they claimed to be performing, with the additional fees used to pay commissions, kickbacks and fees to third-party administrators [of the retirement plans]").

Despite all this, Prudential argues that the "enterprise" fails a distinctness requirement because it consists of the three defendants. But there is no requirement under 18 U.S.C. 1961(4) that an enterprise be a separate legal entity. Plaintiff has properly alleged that Defendants' actions were taken as part of the alleged enterprise, and not just in their individual capacities. (Compl. ¶ 4 ("Defendants Morningstar and the Prudential Defendants **built together and**

*marketed as a 'paradigm change' in investing*" the GoalMaker software program.") Building GoalMaker "together" in the first instance, and then engaging in ostensibly world-historical joint-marketing activities aimed at influencing the Plans and their sponsors and investors (including Plaintiff) is not part of the Defendants' normal "business relationship."

Prudential also argues there was no enterprise here consistent with the holding in *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Bund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013). In doing so, Prudential misreads *Walgreen.* This Court made clear in *Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1094 (N.D. Ill. 2016), that the Seventh Circuit dismissed the complaint in *Walgreen* because the allegations failed to establish that the defendants were conducting the affairs of the enterprise – and not because no enterprise existed. In fact, the court in *Walgreen* **assumed** the complaint pleaded the existence of an association-in-fact enterprise. *Id.*

Indeed, this Court upheld the RICO claim in *Menzies* because like Defendants here, and unlike the defendants in *Walgreen*, the "defendants planned and worked in concert, even referring business to one another vital to the fraud. . . all in aid of a single overall scheme that generated sustained profits for the enterprise membership." *Menzies*, 197 F. Supp. 3d at 1094-1095 (citing *Bible v. United Student Aid Funds, Inc.,* 799 F.3d 633, 656 (7th Cir. 2015)). Plaintiff here clearly alleges that Defendants worked together to get kickbacks and other wrongful payments (like Morningstar's GoalMaker-related development and "consulting" revenues), which ultimately were paid for by Plaintiff and the proposed Class's retirement savings, and that these payments would generate sustained profits for Defendants.

Plaintiff explicitly alleges that Defendants had a "common purpose" of "influencing Plaintiff and other Plan investors to choose the most expensive investment options in their plans

11

so that the Prudential Defendants could reap their windfall fees and Morningstar could stay gainfully employed helping them do so." (Compl. ¶ 57.) Plaintiff alleges that Defendants joined together through the building and marketing of GoalMaker for a common financial interest. This is very different than *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 687 (N.D. Ill. 2012), where the plaintiff failed to demonstrate any common purpose or relationship among the defendants. *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12 CV 1662, 2014 WL 4783833, at *6 (N.D. Ill. Sept. 25, 2014), is also distinguishable because it dealt with a "so-called 'hub-and spoke' enterprise" where there was "no indicia of any association" among the enterprise members including that they even communicated or were aware the others were part of the enterprise.

### 3. *Plaintiff Has Alleged RICO Standing*

Contrary to Prudential's assertions, Plaintiff has properly alleged but-for and proximate causation for RICO standing. Courts have found RICO standing based on fraudulent marketing behavior (misrepresentation and concealment) leading to overpayment, which is what Plaintiff alleges here. For example, in *In Re Avandia Marketing, Sales Practices & Product Liability Litigation,* 804 F.3d 633 (3d Cir. 2015), pharmacy benefit managers gave drug preferred status on formularies on the basis of deceptive marketing practices allegedly causing third-party-payors to overpay for the drug when safer and cheaper drugs were available. The court concluded that the alleged harm, i.e. the overpayment, was a sufficiently concrete injury to be actionable under RICO. *Id.* at 640-641. Similarly here, Defendants' cleverly concealed and misleading GoalMaker-related investment steering led Plaintiff and the proposed Class to overpay for retirement account management fees. Again, GoalMaker did this by steering them to the investment funds with preferred status – that is, the ones selected to be in GoalMaker, which paid

12

revenue sharing fees. Plaintiff lost money because he would have paid lower fees on his 401(k) investments had the Prudential Defendants included all of the Plan's investment choices and not improperly steered investment in those choices that paid higher revenue sharing payments involved here via GoalMaker.

Specifically, Plaintiff alleges "Plaintiff and members of the Class have been injured in their business or property by, among other things, paying higher fees to the Prudential Defendants for retirement investments and accordingly receiving less return on those investments than they would have in the absence of the Prudential Defendants' illegal conduct." (Compl. ¶¶ 23-25, 86 ("Defendants do all these things in a pattern and on a coordinated basis in a way that causes loss of money and/or property to Plaintiff and the Class." " . . . *the GoalMaker kickbacks were paid out of Plaintiff and the Plan investors' retirement savings*.").) Plaintiff further alleges that Defendants rewarded the pay to play funds by including them in GoalMaker to the exclusion of those funds that do not pay, like Vanguard. They did this to the financial detriment of Plaintiff and other retirement investors. (Compl. ¶ 19-21.)

Plaintiff also properly alleges proximate causation, which is not eliminated by any acts of the Plan or Plaintiff himself. Proximate causation is met where "[a]ccepting the facts as recited in the complaint, the defendants' [] acts were a 'substantial and foreseeable cause' of the injuries alleged by the plaintiffs." *Brown v. Cassens Transp. Co.,* 546 F.3d 347, 357 (6th Cir. 2008) (internal citation omitted). Here, Defendants' acts of: (1) creating and marketing GoalMaker to Plaintiff and retirement investors and plans and (2) failing to disclose the true purpose and mechanism of the biased GoalMaker program and the extent of the revenue sharing fees was a substantial and foreseeable cause of the excessive fees paid to Prudential from Plaintiff's and the participants' retirement accounts. Indeed, this, Plaintiff alleged here, was the very *purpose* of

Defendants' acts. *See also In Re Avandia Marketing,* 804 F.3d at 645-646 (finding proximate causation because plaintiffs "'were primary and intended victims of the scheme to defraud' and their injury was a 'foreseeable and natural consequence of [the] scheme," regardless of whether they relied on the misrepresentations.'") (citing *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 650 (2008)).

*In re Neurontin Marketing & Sales Practices Litig.,* 712 F.3d 21 (1st Cir. 2013) is also instructive. The court there, again relying on *Bridge v. Phoenix Bond & Indem. Co*, found proximate causation under RICO where the defendant's liability for overpayment due to misrepresentations about a drug's effectiveness was "plainly foreseeable" because the third-party health insurers would pay for more expensive drugs being presented as a result of the defendant's "fraudulent marketing plan." *Id*. at 38-39. Here, when Defendants removed the low-cost competing funds from GoalMaker, they knew Plaintiff and other participants would end up in the more expensive funds, resulting in overpayments.

*Hemi Group, LLC v. City of New York*, 559 U.S. 1, 11 (2010), which Prudential cites extensively, is distinguishable. As noted by the court in *In re Neurontin,* 712 F.3d at n.12, *Hemi* was a plurality 4-1-3 decision, with no majority on the issue of proximate cause. Ultimately, the Court in *Hemi* found no proximate causation because the defendant's scheme was failing to report customer information to states of residence under the Jenkins Act so that New York State, not the plaintiff New York City, was the foreseen victim. *Id.* at 10-12. Here, the foreseen victim of Defendants' scheme is clearly Plaintiff and the proposed Class, the persons bringing this action and who were injured.

Prudential's argument of intervening causes is likewise unpersuasive. Plaintiff explicitly alleged in the Complaint that "the Enterprise here has open-ended continuity; that is, it involves

14

past conduct that by its nature projects into the future with a threat of repetition. Second, any disclosure and/or act of retirement plan sponsor embrace of GoalMaker like the aforementioned does not sever the chain of RICO causation[.]" (Compl. ¶ 26.) This allegation is consistent with RICO precedent. *See, e.g., BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011) (in RICO case observing that "The plaintiff doesn't have to prove a series of negatives; he doesn't have to 'offer evidence which positively exclude[s] every other possible cause of the accident.' . . . . Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation.").

Similarly, *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 192 F. Supp. 3d 963, 970 (N.D. Ill. 2016) and *Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*, 214 F. Supp. 3d 675, 691-692 (N.D. Ill. 2016) are distinguishable because the intervening causes there were independent and not predictable as they were in *BCS Services* and as they are here. Defendants predicted, and in fact ***planned***, that by marketing GoalMaker to the Plans as a "paradigm change" and purportedly free of cost (Compl. ¶ 4), the Plans would choose to use GoalMaker and thus their retirement plan investors like Plaintiff and the proposed Class would via GoalMaker automatically and unbeknownst to them pick more expensive investments that paid kickbacks and other wrongful revenues to Defendants here while saddling Plaintiff and the proposed Class with higher fees.

## IV.    CONCLUSION

For these reasons, Prudential's Motion to Dismiss should be denied in its entirety.

DATED this 22nd day of September, 2017.

By:     */s/ Michael M. Mulder*

Michael M. Mulder
Elena N. Liveris
LAW OFFICES OF
MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Tel: 312-263-0272
Fax: 847-563-2301
mmmulder@mmulderlaw.com
eliveris@mmulderlaw.com

Austin Tighe (NDIL Bar No. 90784528)
NIX PATTERSON & ROACH, LLP
3600 N. Capital of Texas Hwy.
Suite B350
Austin, Texas 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
atighe@nixlaw.com

Garrett W. Wotkyns*
John J. Nestico*
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone: (480) 428-0145
Facsimile: (866) 505-8036
gwotkyns@schneiderwallace.com
jnestico@schneiderwallace.com

Todd Schneider*
James A. Bloom*
Kyle G. Bates*
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
*Attorneys for Plaintiff*                    jbloom@schneiderwallace.com
  *Pro Hac Vice application forthcoming       kbates@schneiderwallace.com

16

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on September 22, 2017, a true and correct copy of the foregoing document was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: September 22, 2017      By:    */s/ Michael M. Mulder*
                                          Michael M. Mulder